UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | * | |
| Trimont Energy (GIB), LLC[1] | * | Chapter 11 Subchapter V |
| Debtor | * | Case No. 23-11869 |
| *********************************** | | |
| In re: | * | |
| Whitney Oil & Gas, LLC | * | Chapter 11 |
| Debtor | * | Case No. 23-11873 |
| *********************************** | | |

**MOTION FOR ORDERS
APPROVING SALE OF PROPERTY OF THE
ESTATE FREE AND CLEAR OF LIENS AND CLAIMS**

Trimont Energy (GIB), LLC ("GIB"), pursuant to, *inter alia*, sections 105 and 363 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) and Bankruptcy Rules 2002, 6004, and 9014, hereby files this motion seeking an order approving the sale of property of the estate free and clear of liens and claims ("Sale Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. JURISDICTION**

1. The United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1134. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). The statutory bases for the relief sought herein are Sections 105, 363, 365, 1107, and 1108 as complimented by Bankruptcy Rules 2002, 6004, 9008, and 9014.

---

[1] Trimont Energy (NOW), LLC (#23-11868); Trimont Energy (GIB), LLC (#23-11869); Trimont Energy Limited, Inc. (#23-11872); and Whitney Oil & Gas, LLC (#23-11873) have joint noticing procedures.

{00381738-3} 1

2. GIB consents to entry of final order(s) or judgment(s) by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## II. BACKGROUND

3. On October 25, 2023, GIB filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected to proceed under subchapter V.

4. On November 2, 2023, GIB, along with co-debtors, Trimont Energy (NOW), LLC ("NOW") and Trimont Energy Limited, Inc. ("TEL") and Whitney Oil & Gas, LLC ("Whitney," and collectively with GIB, NOW and TEL, the "Debtors") filed a *Motion for Orders (A) Approving Auction Procedures and Bid Procedures; and (B) Approving Sale of Property of the Estate Free and Clear of Liens and Claims* [Case 23-11868, ECF Doc. 42; Case 23-11869, ECF Doc. 41; Case 23-11872, ECF Doc. 39; Case 23-11873, ECF Doc. 40] (the "Bid Procedure Motion"). On December 11, 2023, the Court entered an *Order Approving Auction Procedures and Bid Procedures for Sale of Property of the Jointly Administered Estates Free ad Clear of Liens and Claims* [Case 23-11868, ECF Doc. 101; Case 23-11869, ECF Doc. 89; Case 23-11872, ECF Doc. 82; Case 23-11873, ECF Doc. 100, as amended by Case 23-11868, ECF Doc. 153; Case 23-11869, ECF Doc. 135; Case 23-11872, ECF Doc. 119; Case 23-11873, ECF Doc. 147] (the "Bid Procedure Order").

5. The Bid Procedure Motion sought authority to sell free and clear oil and gas assets of the Debtors in both the East Bay field and the Garden Island Bay field. The assets to be sold in East Bay field (the "EB Assets") are owned by Whitney and the assets to be sold in Garden Island Bay field (the "GIB Assets" and together with the EB Assets, the "Assets") are owned by GIB. Whitney is the operator of record for the assets in both the East Bay and Garden Island Bay fields.

6. The Assets to be sold consist of certain oil and gas leases, equipment necessary for the production of oil and gas from the leases owned by the Debtors, which includes, but is not

limited to, platforms, flow lines and other equipment, intellectual property acquired in connection with the oil and gas properties, cash and accounts receivable.

7. Chevron U.S.C., Inc. ("Chevron") and EnerVest Energy LP and EnerVest Operating LLC ("EnerVest") hold certain consent rights (the "Consent Rights") as to the sale of the GIB Assets. The GIB Assets are also encumbered by certain liens under the Louisiana Oil Well Lien Act (the "LOWLA Liens"). As such, any sale of the GIB Assets is contingent upon Chevron and EnerVest not unreasonably withholding their consent.

8. The Bid Procedure Order set certain deadlines for the bidding and auctioning of the Debtors' Assets:

| | |
|---|---|
| February 29, 2024 | Deadline to submit bids. |
| Two business days after Bids are deemed Qualified | Submit Qualified Bids to Noticed Parties (Chevron U.S.A., Inc., RLI Insurance Company, EnerVest Energy, L.P., UST) |
| March 21, 2024, 10:00 a.m. (Central Time) | Auction to be held |
| March 22, 2024, 5:00 p.m. (Central Time) | Debtors to file notice of results of the Auction. |
| March 26, 2024, 5:00 p.m. (Central Time) | Deadline to file Sale Motion and Motion to Assume/Assign |
| April 3, 2024, 5:00 p.m. (Central Time) | Deadline to Object to the Sale Motion and Motion to Assume/Assign. |
| April 10, 2024 | Hearing on the Sale Motion and Motion to Assume/Assign |

9. As a result of the marketing efforts of the Debtors and Chaffe & Associates, Inc., as sales agent, the Debtors received seven bids by the Bid Deadline of February 29, 2024, none of which met the criteria to become Qualified Bids, as that term is defined in the Bid Procedures Order. It also became clear that it would be beneficial to the Debtors' estates and the creditors to bifurcate the sale between the GIB assets and the EB assets as the majority of the interest is in the GIB field with only minimal interest in the EB assets.

10. On March 21, 2024, the Court held a status conference to consider the Debtors' *Motion for an Order Extending Deadlines Related to Auction and Sale of Debtors' Assets* [Case No. 23-11868, ECF Doc. 244; Case No. 23-11869, ECF Doc. 207; Case No. 23-11873, ECF Doc. 199] (the "Extension Motion"). At the status conference, the parties agreed that the auction would not happen due to the lack of qualified bids. The parties also agreed to bifurcate the sale process between the GIB Assets and the EB Assets and set new deadlines based on that bifurcated process.

11. It was determined that GIB, as the owner of the GIB Assets, would file a sale motion on or before April 8, 2024, and would have until April 15, 2024, to file a plan of reorganization.

12. Since that time, GIB has been in good faith negotiations with Spectrum AR, LLC ("Spectrum"), as a buyer of the GIB Assets. Those negotiations resulted in an agreed upon Purchase and Sale Agreement ("PSA" attached hereto as **Exhibit 1**) for the purchase and sale of the GIB Assets (as defined herein) from GIB.

13. In order to close the sale as contemplated in the PSA, GIB is filing the instant Sale Motion, and will file an accompanying motion to assume and assign certain executory contracts and unexpired leases, seeking authority from this Court to transfer the GIB Assets from GIB to Spectrum.

### III. THE PROPOSED SALE[2]

14. The proposed sale to Spectrum is for the full transfer and assignment of substantially all of the GIB Assets, as identified in the PSA (less the excluded assets listed in the PSA), for the purchase price of $3,600,000.00 (the "Purchase Price") plus the payment of $357,353.70 (the "Cure Amount") for the cure amounts owed on certain executory contracts to be assumed by Spectrum, free and clear of liens and claims, with a projected closing date on or before June 1, 2024 (the "Closing Date"), with an effective date of June 1, 2024 (the "Effective

---

[2] The following is intended as a summary of the material terms set forth in the PSA. To the extent that any provision of this Motion conflicts with the terms of the PSA, the PSA shall control.

Date").

15. The Purchase Price is subject to adjustments as follows:

- The Purchase Price shall be <u>decreased</u> by: (1) any revenues collected by GIB with respect to the GIB Assets and attributable to any hydrocarbons produced after the Effective Date; (2) all downward Purchase Price adjustments for title defects with respect to certain assets to the extent not waived; and (3) any other amounts provided for in the PSA or agreed upon by the parties.

- The Purchase Price shall be <u>increased</u> by an amount equal to all costs and expenses incurred and paid by GIB or any affiliate of GIB that are attributable to the Assets and attributable to the period of time after the Effective Date.

16. In the event that a competing buyer wants to purchase the GIB Assets, any such competing offer must exceed the Purchase Price by at least $100,000.00 (the "<u>Overbid Protection</u>"). Further, in the event that the PSA is terminated by GIB in favor of a competing offer, GIB shall pay to Spectrum a breakup fee equal to: (i) 3% of the Purchase Price or $108,000.00, (the "<u>Spectrum Termination Fee</u>").

17. Proceeds from the sale shall be distributed in accordance with a confirmed plan of reorganization to be filed by GIB no later than April 15, 2024, pursuant to this Court's March 22, 2024, Order [ECF Doc. 258], unless otherwise remitted pursuant to an Order approving the Sale Motion.

18. The sale of the GIB Assets to Spectrum shall be free and clear of any and all existing liens and encumbrances on the GIB Assets (except as otherwise designated in the PSA), and such liens and encumbrances on the GIB Assets will attach to the proceeds of the sale, subject to the Carve Out of the Debtors' administrative expenses, as discussed in the Court's March 21, 2024, *Sixth Interim Order (I) Authorizing Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Scheduling a Seventh Interim hearing; and (V) Granting Related Relief* [ECF Doc. 255] and as may be extended under any future interim or final orders of this Court (the "<u>Interim Cash Collateral Order</u>").

19. Except as otherwise indicated in the PSA (including but not limited to the "Excluded Assets" as defined in the PSA), Spectrum will acquire the GIB Assets in an "as is where is" condition and shall assume all risks that the GIB Assets may contain waste materials or other adverse conditions which may not have been revealed by Spectrum's investigation and due diligence. All responsibilities and liabilities for such adverse conditions arising on or after the Effective Date shall be transferred to Spectrum.

20. The PSA provides that Spectrum shall be subject to all existing royalty interests and overriding royalty interests attached to the GIB Assets from the Effective Date forward, together with any and all plug and abandonment obligations and all environmental liabilities associated therewith, whether arising before or after the Effective Date, known or unknown.

21. <u>Consent to Jurisdiction.</u> Spectrum is deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Sale or the construction and enforcement of any documents.

22. <u>Proposed Sale Hearing</u>. GIB requests that the Sale Hearing be conducted on May 7, 2024. At the Sale Hearing, GIB shall seek the entry of the Sale Order in the form attached hereto as **Exhibit 2**, which shall, *inter alia,* (i) approve sale as contemplated in the PSA and the transfer of the GIB Assets to Spectrum, free and clear of all liens and encumbrances (except as otherwise designated in the PSA), with such liens and encumbrances to attach to the net proceeds of the sale of the GIB Assets (that were not distributed at the Closing of the sale or sales pursuant to Court Order) upon closing; (ii) upon reasonable evidentiary showing, contain a finding that Spectrum is a good faith purchaser pursuant to Section 363(m); and (iii) provide that the closing shall be as set forth in the PSA.

### IV. <u>LEGAL ARGUMENT</u>

23. GIB requests that the Court determine that (a) the proposed sale outside the ordinary course of GIB' businesses is appropriate; (b) the proposed sale may be made free and clear of liens, claims, interests and encumbrances; and (c) the proposed sale is in good faith.

**A.** <u>**The Court May Approve a Sale of Assets Outside the Ordinary Course Where There Exists an Articulated Business Justification.**</u>

24. Section 363(b)(1) governs the sale of property of a bankruptcy estate and provides, in pertinent part, as follows: "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). In the instance of a sale pursuant to Section 363(b), a debtor must demonstrate a valid business justification to grant the request. See In re 240 N. Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("Debtor who wishes to utilize §363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification"); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business . . ."); see also Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069-71 (2d Cir. 1983); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

25. Consistent with the foregoing, bankruptcy courts consider a wide range of factors in approving sales outside the ordinary course of business, including the following:

(1) Whether a sufficient business reason exists for the sale;

(2) Whether the proposed sale is in the best interest of the estate, which considers the following factors:

    (a) that terms of the sale are fair and reasonable;

    (b) that the proposed sale has been adequately marketed;

    (c) that the proposed sales terms have been properly negotiated and proposed in good faith; and

    (d) that the proposed purchaser is involved in an "arms-length" transaction with the seller; and

(3) Whether notice of the sale was sufficient.

See In re Walter, 83 B.R. at 19-20.

26. The bankruptcy court should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders, alike. It is not necessary for the bankruptcy court to consider each factor listed in the

case, or to use any specific set of factors. See 240 North Brand Partners, Ltd., 200 B.R. at 659; In re Work Recovery, Inc., 202 B.R. 301, 304 (Bankr. D. Ariz. 1996) In re Country Manor of Kenton, Inc., 172 B.R. 217, 221 (Bankr. N.D. Ohio 1994) (using a four-factor test). Moreover, to the extent that any factors are utilized, there is no necessity that those factors must be given equal weight to determine the outcome. See Matter of Embrace Systems Corp., 178 B.R. 112 (Bankr. W.D. Mich. 1995) (citing In re Lionel Corp., Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986)).

27. In ruling on a motion to sell assets outside of the ordinary course of business, courts recognize that a debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference. See Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); In re Canyon P'ship, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Where a debtor in possession proffers a rational justification, "the bankruptcy court should presume that debtor-in-possession acted prudently on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 670 (9th Cir. 2007). Moreover, under the "business judgment rule," there is a presumption that, where a debtor's appropriate governing authority implements and follows fair procedures in making a decision, it acts in good faith and for a rational business purpose. See, e.g., In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) ("The board of directors is in the business of running the corporation. If the procedures utilized by the directors are applied fairly, and if the directors do not violate any of their fiduciary duties, then, under the business judgment rule their decision will not be second-guessed.") (citations omitted). A debtor's showing of sound business judgment need not be unduly exhaustive, rather a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

28. The sale of the GIB Assets proposed to be sold herein as requested herein will result in a significant benefit to GIB's estate. The sale proposed herein will provide sufficient

capital to fund a plan of reorganization.

29. Moreover, the sale, pursuant to the proposed terms of the PSA, has been proposed in good faith, to maximize the recovery to creditors. In GIB's best business judgment and in consultation with Chaffe, it believes that the proposed PSA provides for the best terms possible in exchange for the GIB Assets. The decision to pursue the sale is an exercise of sound business judgment, is in the best interest of GIB and its estate and should be approved in all respects.

**B.** **The Sale of the GIB Assets Free and Clear of All Liens, Claims, and Encumbrances, Pursuant to Section 363(f) Is Permitted Under the Circumstances.**

30. Section 363(f) governs the sale of property of the estate free and clear of interests and provides, in pertinent part, the following:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if --
>
> (1) Applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) Such entity consents;
>
> (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) Such interest is in bona fide dispute; or
>
> (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell the property free and clear of liens. See Citicorp Mortgage, Inc. v. Brooks (In re Ex-Cel Concrete Co.), 178 B.R. 198, 203 n.7 (B.A.P. 9th Cir. 1995); Citicorp Homeowners Svcs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).

31. To the extent that any party receives notice but does not file a written objection to

this Motion, such party should be deemed to have consented to the sale of the GIB Assets free and clear of any interest of such party in the GIB Assets. See In re Metropolitan Mortgage & Securities Co., 2007 WL 2277573 at *4 (Bankr. E.D. Wash. 2007); In re Congoleum Corp., 2007 WL 1428477 at *1 (Bankr. D.N.J. 2007); In re Elliot, 94 B.R. at 345-46.

32. Furthermore, to the extent that any objection is received to this Sale Motion on the basis that the sale cannot be free and clear of liens, claims and interests pursuant to Section 363(f), GIB reserves the right to argue that any of the other bases for a sale "free and clear" under section 363(f) apply. Consequently, and in the absence of any such objection, a sale of the GIB Assets free and clear of the liens, claims, encumbrances, and interests satisfies Section 363(f).

C. **The Court Should Find the Sale Is in Good Faith.**

33. "[W]hen a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the prospective purchaser." In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986). The purpose of such a finding is to facilitate the operation of section 363(m), which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith." Section 363(m) provides as follows:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

see also Ewell v. Diebert (In re Ewell), 958 F.2d 276, 279 (9th Cir. 1992).

34. Section 363(m) serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. See In re Abbotts Dairies, 788 F.2d at 147; Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 54-55 (7th Cir. 1983). As one court recognized, "[i]f purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the

deed that they receive at the sale, it will be difficult to liquidate bankrupt estate at positive prices." In re Edwards, 962 F.2d 641, 643 (7th Cir. 1992). That court noted that, although the law balances the competing interests between lien holders and purchasers of assets of the estate, it weighs such interests "heavily in favor of the bona fide purchaser." Id. at 643.

35. Here, the proposed sale and PSA is the result of an arms-length negotiation between independent parties. As such, the sale will be in good faith and that Spectrum should be entitled to the protection afforded to good faith purchasers under Section 363(m) of the Bankruptcy Code.

**G.   The Court Should Waive the Stay Under Bankruptcy Rules 6004(h) and 6006(d).**

36. Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, an order authorizing the sale of property pursuant to section 363 is automatically stayed for fourteen days after entry of the order. See Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to Section 365(f) for fourteen days, unless the court orders otherwise.

37. A waiver of these stay provisions is justified under the circumstances. The PSA and proposed Closing Date make the waiver of the stay essential in order to consummate the sale and provide maximum benefit to the estate, which balances the needs of due process against delay that might jeopardize the sale and the business and might result in the incurrence of increased administrative expenses by the estate. That same balancing of interests weighs in favor of providing that the order approving the transaction be immediately effective.

## V. CONCLUSION

Based upon all the foregoing, GIB respectfully requests that the Court approve the Sale Motion and following the Sale Hearing, approve the sale of the GIB Assets to Spectrum free and clear of liens, claims, interests, and encumbrances. GIB further requests all such other and further relief as the Court deems just and proper.

April 8, 2024

Respectfully submitted:

*/s/Douglas S. Draper*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, La Bar No. 36542
mlandis@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

***Counsel for Trimont Energy (GIB), LLC***

## CERTIFICTAE OF SERVICE

I, Douglas S. Draper, do hereby certify that I caused the above and foregoing to be served on April 8th, 2024, to all parties entitled to service via the court's CM/ECF Electronic Notification System as follows:

- **Julia E. Blewer**  jblewer@davidsonsummers.com
- **Greta M. Brouphy**  gbrouphy@hellerdraper.com, vgamble@hellerdraper.com
- **Jase Brown**  jbrown@csglaw.com
- **Jason M. Cerise**  jcerise@lockelord.com, nobankecf@lockelord.com
- **Scott R. Cheatham**  scott.cheatham@arlaw.com, vicki.owens@arlaw.com
- **Douglas S. Draper**  ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **Cade Evans**  cade@benoitevans.com, celeste@benoitevans.com
- **Elizabeth J. Futrell**  efutrell@joneswalker.com, mmontiville@joneswalker.com;lisa-futrell-4186@ecf.pacerpro.com
- **Amanda Burnette George**  Amanda.B.George@usdoj.gov
- **Markus E. Gerdes**  markus@gerdeslaw.net, angel@gerdeslaw.net;gerdeslawfirmllc@gmail.com;gerdesmr55083@notify.bestcase.com
- **Richard Gladstein**  richard.gladstein@usdoj.gov
- **Julie Harrison**  julie.harrison@nortonrosefulbright.com
- **Jan Marie Hayden**  jhayden@bakerdonelson.com, ptorres@bakerdonelson.com;jmclemore@bakerdonelson.com
- **William Lake Hearne**  lhearne@davidsonsummers.com, mbryant@davidsonsummers.com;jblewer@davidsonsummers.com
- **Stephen Austin Jones**  sajones@foley.com
- **Brian I. Kantar**  bkantar@csglaw.com

- **William H.L. Kaufman**  whkaufman@ohllc.com, mfclavier@ohllc.com;rsdupont@ohllc.com
- **Michael E. Landis**  mlandis@hellerdraper.com, Vgamble@hellerdraper.com
- **J. Eric Lockridge**  eric.lockridge@keanmiller.com, stephanie.gray@keanmiller.com;eric-lockridge-9072@ecf.pacerpro.com
- **Ryan E. Manns**  ryan.manns@nortonrosefulbright.com
- **Robert L. Marrero**  office@bobmarrero.com, robert@bobmarrero.com;Marrero.RobertR106702@notify.bestcase.com
- **Caroline McCaffrey**  cmccaffrey@joneswalker.com
- **John A. Mouton**  john@jmoutonlaw.com
- **Dwayne M. Murray**  dmm@murraylaw.net, la18@ecfcbis.com;trustee3@murraylaw.net
- **Jonathan Ord**  jord@krebsfarley.com, eleblanc@krebsfarley.com
- **Cayce Peterson**  cayce@jjclaw.com
- **Mike Pipkin**  mpipkin@weinrad.com, scollins@weinrad.com
- **Lacey E Rochester**  lrochester@bakerdonelson.com, jbowers@bakerdonelson.com;jmclemore@bakerdonelson.com
- **Armand Samuels**  asamuels@lawla.com
- **Glenn K. Schreiber**  glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov
- **Ryan Seidemann**  seidemannr@ag.louisiana.gov
- **Patrick M. Shelby**  patrick.shelby@phelps.com
- **Timothy Thriffiley**  tthriffiley@pivachlaw.com, Mmajchrzak@pivachlaw.com
- **Office of the U.S. Trustee**   USTPRegion05.NR.ECF@usdoj.gov
- **Broocks Wilson**  mack.wilson@keanmiller.com

*/s/Douglas S. Draper*
Douglas S. Draper